IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RHONDA L. STITH                                                                    PLAINTIFF

V.                                          NO. 09-5012

MICHAEL J. ASTRUE,
Commissioner of Social Security                                                    DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Rhonda L. Stith, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner), denying her claims for disability and disability insurance benefits under Title II of the Social Security Act (the Act) and Supplemental Security Income under Title XVI of the Act. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**Procedural Background**

Plaintiff applied for disability insurance benefits, as well as supplemental security income on November 17, 2003, alleging an onset date of September 12, 2002 (Tr. 171-172).[1] Her claims were denied initially and upon reconsideration. (Tr. 136-140, 75-76). On August 25, 2005, a hearing was held before an Administrative Law Judge (ALJ). (Tr. 610-630). On March 9, 2007, the ALJ issued a partially favorable decision, determining that Plaintiff's onset of disability occurred on

---

[1]The record reflects that Plaintiff filed two prior applications in 1999 and 2000, both of which were denied.

March 16, 2004, rather than on September 12, 2002.  (Tr. 14-22 ).  On November 14, 2008, the Appeals Council denied Plaintiff's request for review.  (Tr. 10-13).

The sole issue raised by Plaintiff in this appeal is whether there is substantial evidence to support the ALJ's finding that Plaintiff became disabled on March 16, 2004, rather than September 12, 2002, as alleged by Plaintiff.

In his March 2007 decision, and after careful consideration of the entire record, the ALJ found that Plaintiff had the following severe physical impairments: chronic bronchitis; rheumatoid arthritis; left-sided carpal tunnel syndrome; and radiculopathy of the lower extremities.  The ALJ found that Plaintiff also suffered from depression and anxiety, but that these mental impairments were "objectively substantiated only as of March 16, 2004." (Tr. 19).  The ALJ found that, as of her alleged onset date of September 12, 2002, Plaintiff's mental impairments caused no more than minimal limitations on her ability to perform work-related activities;  however, as of March 16, 2004, Plaintiff "came to be able to perform only that work not precluded by serious limitations in the following abilities: making judgments on simple work-related decisions, responding appropriately to work pressures in a usual work setting and responding appropriately to changes in a routine work setting."  (Id.)  The ALJ concluded, therefore, that Plaintiff became disabled no earlier than March 16, 2004.  (Tr. 21-22).

**Evidence Presented**

Plaintiff began having difficulties with lower back, leg and shoulder pain as early as 1990 (Tr. 310, 354, 309, 353), which continued thereafter from 1994 through 2006.  In May of 2000, a Psychiatric Review Technique was conducted by Brad Williams, Ph.D.  (Tr. 410-418).  He diagnosed Plaintiff with Depression, NOS, and found that Plaintiff had a slight restriction of

activities of daily living and slight difficulty in maintaining social functioning, had seldom deficiencies in concentration, persistence or pace, and never had any episodes of decompensation in a work or work-like setting. (Tr. 417).

A physical residual functional capacity (RFC) assessment was conducted by Dr. Ronald M. Crow on July 25, 2000, wherein Dr. Crow found that Plaintiff could:

- occasionally lift and/or carry 50 pounds;
- frequently lift and/or carry 25 pounds;
- stand and/or walk about 6 hours in an 8 hour workday;
- sit about 6 hours in an 8 hour workday; and
- push and/or pull to an unlimited extent.

(Tr. 420). He also found that plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 421-423).

On September 12, 2001, Plaintiff went to Ozark Guidance Counseling (OGC), reporting physical problems, conflicts with her son, financial problems and an inability to work due to her constant back pain. (Tr. 509). Plaintiff also stated that she was depressed and overwhelmed by problems with her two sons and financial worries. (Tr. 509). She reported that she had two ruptured discs in her back, could not stand or walk for any period of time and that she was in continual pain. (Tr. 509). She admitted using marijuana in the past for relief. (Tr. 509). In a 2003 Disability report, Plaintiff indicated that she had never been seen by a doctor/hospital/clinic or anyone else for emotional or mental problems that limited her ability to work, and that she was not currently on any medications. (Tr. 272).

On February 26, 2004, another physical RFC assessment was completed by Dr. Robert M. Redd, who found that Plaintiff could:

- occasionally lift and/or carry 50 pounds;

- frequently lift and/or carry 25 pounds;
- stand and/or walk about 6 hours in an 8 hour workday;
- sit about 6 hours in an 8 hour workday; and
- push and or pull with no limitations.

(Tr. 470). He also found that no postural, manipulative, visual, communicative, or environmental limitations were established. (Tr. 471-473). On March 20, 2004, Dr. Randy Conover found that Plaintiff could see, hear and speak, had the moderate ability to walk, stand, lift and carry, and had the mild ability to sit, handle and finger. (Tr. 468).

It was not until March 16, 2004, that Plaintiff presented again to the OGC, complaining of depression. (Tr. 505). Plaintiff's son, who had cerebral palsy and had been under Plaintiff's care, died on December 15, 2003. (Tr. 505). Plaintiff was weepy throughout the intake interview with Nancy Schmall-Scharfenberg, and wondered if the hospital had let him die since he was an organ donor. (Tr. 505). She stated that she was filing for disability for the third time because of constant back pain, and listed the following problems:

- coping with stress;
- relationship problems;
- anxiety;
- depression;
- unstable mood;
- reaction to trauma;
- confusion;
- legal difficulties;
- physical health problems; and
- grief.

(Tr. 505). Plaintiff stated that she had difficulty sleeping and that she sometimes heard voices. (Tr. 505). Plaintiff reported that she was in continual pain. (Tr. 506). However, as of March 10, 2004, Plaintiff did not take any medication and reported she smoked a pack of cigarettes daily. (Tr. 505). Plaintiff also stated that she cared for her daughter's children during the week while her daughter

was at work, and that she loved doing that. (Tr. 505). Plaintiff was diagnosed with:

- •      Axis I - Adjustment d/or w mix anxiety and dep mood; bereavement;
- •      Axis II - no diagnosis;
- •      Axis III - reports back problems, allergic to motrin and codeine, occupational problems, economic problems, problems with access to health care; problems related to interaction with legal system; other psychological and environmental problems;
- •      GAF - 61.

(Tr. 507-508). During her April 29, 2004 visit with Joyce Vanderpool at OGC, Plaintiff reported that she took over the counter Equate PM but no other medications. Plaintiff was noted to walk with anthalgic gait. (Tr. 493, 495). She was depressed, nervous around people, missed her son, was slightly disorganized and circumstantial in her thought processes, but was mainly coherent and logical. (Tr. 495). Plaintiff was given a Zoloft Starter Kit at this meeting, as well as Seroquel to help her sleep. (Tr. 497). Plaintiff thereafter received therapy at OGC on a regular basis. (Tr. 503, 501, 499-500, 491-498, 485, 487, 480-484, 483-484, 522, 522, 521, 520, 518, 515).

On May 13, 2004, Plaintiff reported that she was doing really well on the Zoloft but that the Seroquel made her feel queasy. (Tr. 487). By June 17, 2004, Plaintiff was feeling "wonderful" and had cut back on her smoking to ½ pack of cigarettes a day. (Tr. 480-481). Her GAF was 60-65. (Tr. 481). Plaintiff did not return to OGC until October 25, 2004, with slightly improved depression. (Tr. 522). However, she was approaching the anniversary of her son's death and she expected to have a rocky time. Her Zoloft prescription was increased to 100 mg. (Tr. 522). On April 11, 2005, Plaintiff continued to do quite well on her Zoloft, but on May 9, 2005, Plaintiff stated that she was in chronic pain and was concerned about her depression. She said that she often heard voices and that there were times when she thought she saw her dead son. Although she believed Zoloft was helping, she was still having hard days. (Tr. 518). On June 8, 2005, Plaintiff stated that she was in

a great deal of pain due to her lower back problems, knees and shoulders and that she felt her deceased son's presence. (Tr. 515).

On August 25, 2005, at the hearing before the ALJ, Plaintiff stated that she only took Zoloft and nothing for her pain because she could not afford it. (Tr. 622). With respect to daily activities, Plaintiff stated that she did what little she could - the laundry and dishes. She also stated that she had to lie down and take a nap and sometimes had problems taking care of her personal needs. (Tr. 624). She stated that her back and arm were worse, that she could not sit or stand for long periods of time and did not drive or get out in big crowds. (Tr. 626-627).

On October 30, 2006, Dr. Martin T. Faitak, a clinical psychologist, conducted a Psychological Evaluation on Plaintiff, (Tr. 583-586) where he recommended that Plaintiff continue to obtain treatment for depression. (Tr. 586). He further stated that Plaintiff walked to the office with a pronounced limp, and after sitting for seventy-five minutes, asked to stand for a few minutes. (Tr. 583). He further noted that Plaintiff carried her left hand limply by her side, that her affect was controlled, and that she was pleasant and cooperative. (Tr. 583). Dr. Faitak also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) on November 20, 2006. (Tr. 587-589). Dr. Faitak found that Plaintiff had a <u>marked</u> ability to make judgment on simple work-related decisions, was of low average intelligence, was easily confused and disorganized, and had questionable judgment. Dr. Faitak also found that Plaintiff had a <u>marked</u> ability to respond appropriately to work pressures in a usual work setting and a <u>marked</u> ability to respond appropriately to changes in a routine work setting, that Plaintiff had severe depression and anxiety and was socially dependant. (emphasis added) (Tr. 588). He also reported that her writing ability was affected by arthritis. (Tr. 588).

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and, (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC).  See McCoy v. Schwieker, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**Discussion**

The ALJ found that Plaintiff had severe impairments of chronic bronchitis; rheumatoid arthritis; left-sided carpal tunnel syndrome;  radiculopathy of the lower extremities and depression and anxiety.  He further found that these impairments became disabling on March 16, 2004.  The court finds there is substantial evidence to support the ALJ's findings.  From the alleged onset date of September 12, 2002 until March 16, 2004, Plaintiff sought medical treatment for her left hand and wrist pain (no fracture or dislocation was identified and degenerative changes were noted at the distal radial ulnar joint and small subchondral cysts were noted within the carpal bones of the left wrist) (Tr. 542);  a left forearm sprain from moving furniture (Tr. 537);  vomiting and generalized aches; (Tr. 532);  tendonitis in her left hand (Tr. 523); and a vaginal boil. (Tr. 577).   Furthermore, from September 12, 2002 until March 16, 2004, Plaintiff did not seek or receive any mental health treatment.  In fact, in her report dated December 15, 2003, Plaintiff did not list a mental impairment

as among the conditions that limited her ability to work. (Tr. 268). Plaintiff did not even begin taking Zoloft for her depression until April 29, 2004, (Tr. 497) which helped her significantly. Although Plaintiff contended that her failure to seek medical treatment was excused by her inability to afford treatment, Plaintiff put forth no evidence to show that she sought low-cost medical treatment for her physical impairments or had been denied treatment, due to her lack of funds. Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir. 1992). There is also evidence showing that Plaintiff smoked for several years and continued to smoke, at least up until the date of the 2005 hearing, and as such, the court cannot say that her financial situation prevented her from receiving medical treatment.

Dr. Robert Redd, in his physical RFC assessment dated February 26, 2004, over a year after the alleged onset date, indicated that Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday and push and/or pull with no limitations. (Tr. 470). There is clearly substantial evidence to support the ALJ's finding that Plaintiff's capacity for the full range of sedentary work only came to be significantly compromised by her nonexertional limitations as of March 16, 2004, when she began to go to OGC for her depression. Furthermore, it was not until November 20, 2006, that Dr. Faitak, in his statement of Plaintiff's mental ability to do work-related activities, indicated that Plaintiff had a marked ability to make judgments on simple work-related decisions, marked ability to respond appropriately to work pressures and a marked ability to respond appropriately to changes in a routine work setting. (Tr. 588).

Based upon the foregoing, the Court finds that there is substantial evidence to support the ALJ's finding that Plaintiff came to be under a disability beginning no earlier than March 16, 2004,

came to be entitled to Disability Insurance Benefits on the basis of her application of November 17, 2003, and came to be eligible for Supplemental Security Income payments by virtue of her application of the same date.

**Conclusion**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence to support the ALJ's decision granting the Plaintiff benefits beginning on March 16, 2004, and affirms the decision of the ALJ.

DATED this 5th day of February, 2010.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE